# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:12-cv-00052-MR

BROOKE Y. PETERSON,          )
                             )
          Plaintiff,         )
                             )
     vs.                     )     **<u>MEMORANDUM OF</u>**
                             )     **<u>DECISION AND ORDER</u>**
                             )
CAROLYN W. COLVIN[1], Acting )
Commissioner of Social Security, )
                             )
          Defendant.         )
_____ )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 16].

## I.     PROCEDURAL HISTORY

The Plaintiff Brooke Y. Peterson filed applications for Disability Insurance Benefits and Supplemental Security Income on May 7, 2009. [Transcript ("T.") 64-65]. She alleged an onset date of May 30, 2007, which she later amended to April 11, 2009. [T. 25]. The Plaintiff's claim was denied initially and on reconsideration. [T. 68, 74, 121]. Upon the

---

[1] During the pendency of this action, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, Colvin is hereby substituted as the Defendant herein. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Plaintiff's request for a rehearing, a hearing was held before an Administrative Law Judge ("ALJ") on August 16, 2010. [T. 40-57]. On August 31, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 25-35]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be

2

established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.   THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no

3

severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

## IV. THE ALJ'S DECISION

On August 31, 2010, the ALJ issued a decision denying the Plaintiff's claim. [T. 25-35].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2010, and that she has not engaged in

substantial gainful activity since the alleged onset date.[2]  [T. 27]. The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: degenerative disc disease, fibromyalgia, obesity, an affective disorder, and an anxiety disorder.[3]  [T. 27-28]. The ALJ determined that neither of Plaintiff's impairments, either singly or in combination, met or equaled a listing. [T. 28-29]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC) [T. 29-33], finding that the Plaintiff had the ability to perform less than a full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> She is limited to no more than occasional postural activities and she will require a sit/stand option. She is limited in her manipulative abilities as she is limited to frequent handling and fingering bilaterally. She is limited to simple, routine and repetitive jobs in a non-production pace in a low stress and low social environment.

---

[2] The ALJ erroneously found the alleged onset date to be May 30, 2007. As noted previously, the Plaintiff amended her alleged onset date to April 11, 2009 at the ALJ hearing [T. 25]. While this amendment is acknowledged at the beginning of the ALJ's decision, the ALJ's actual findings fail to reflect this amendment.

[3] In the heading of this section of the ALJ's decision, the ALJ also listed polycystic ovarian disease as a severe impairment. [T. 27]. In the text of the decision, however, the ALJ found that "[a]lthough the [Plaintiff] carries a diagnosis of polycystic ovarian disease, the alleged disorder has not resulted in significant vocational restrictions and is, therefore, non-severe."  [T. 28].  The Plaintiff does not appeal the ALJ's determination of this particular disorder as a non-severe impairment.

[T. 29]. He then determined that the Plaintiff was unable to perform any of her past relevant work. [T. 33]. Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [T. 33-34]. He therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date through the date of his decision. [T. 34-35].

**V.    DISCUSSION**[4]

The Plaintiff asserts the following assignments of error: (1) that the ALJ improperly evaluated the medical evidence, including a medical opinion of record, which resulted in a RFC finding which was not supported by substantial evidence and (2) that the ALJ improperly evaluated the Plaintiff's credibility. [Doc. 11].

In arguing that the ALJ improperly evaluated the medical evidence, the Plaintiff specifically argues that the ALJ failed to evaluate the effects of her obesity as required by SSR 02-1p. [Doc. 11 at 15-16]. At step two of the sequential evaluation process, the ALJ determined that the Plaintiff's obesity was a severe impairment. In evaluating the Plaintiff's functional

---

[4] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

limitations for the purpose of determining her RFC, the ALJ stated in a conclusory fashion that the Plaintiff's obesity had been considered. [T. 31]. The ALJ failed, however, to give any meaningful consideration of the Plaintiff's obesity, its effects on exertional functions, her ability to perform routine movement and necessary physical activity within the work environment, or the combined effects of her obesity and other impairments. See SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002). The ALJ's conclusory statement that the Plaintiff's obesity was considered in determining her RFC, therefore, is not supported by the record.

The Plaintiff further argues that the ALJ erred in his characterization of the medical evidence. [Doc. 11 at 12-13]. The Court agrees that the ALJ committed significant error in this regard. In summarizing his findings concerning the Plaintiff's RFC, the ALJ noted that the medical evidence of record "shows that the claimant is able to sit, stand, walk and move about in a satisfactory manner." [T. 32]. The medical evidence cited by the ALJ, however, demonstrates that the Plaintiff had significant difficulty sitting, standing, walking, and moving about, contrary to the ALJ's assessment. Consultative examiner Dr. Anthony G. Carraway noted that the Plaintiff walked "rather slowly and stiffly." [T. 268]. Dana Allen, a nurse practitioner who served as the Plaintiff's primary treatment provider, noted on July 31,

7

2009 that the Plaintiff's lumbar pain was worsened by prolonged activity, including standing, sitting, and twisting. [T. 273]. Consultative examiner Dr. Dale F. Mabe noted that the Plaintiff walked with a slow gait, had difficulty walking on heel and toes, could only squat about one-fourth of the way down with low back pain, and got on and off the exam table slowly. [T. 295]. These objective medical findings are further consistent with the Plaintiff's prior disability and function reports [T. 152, 160], as well as her hearing testimony that she has pain during any physical activity, including walking [T. 44-45]; that she needs to rest after only trying to do something for 15-20 minutes due to the severity of her pain [T. 46]; and that she is unable to stand, walk, or sit for very long [T. 47-48]. For these reasons, the Court concludes that the ALJ's characterization of the Plaintiff's ability to sit, stand, walk, and move about as "satisfactory" is not supported by substantial evidence.

The Plaintiff also challenges the ALJ's credibility determination. [Doc. 11 at 13-14]. In finding the Plaintiff's subjective complaints to be only partially credible, the ALJ noted that the Plaintiff did not require aggressive treatment for her pain and had not been referred for pain management or required hospitalization due to pain. [T. 32]. He specifically discounted the Plaintiff's testimony that she had not sought treatment due to financial

inability by finding that the record did not indicate that she had been turned away from an emergency room or been refused treatment by a physician. [Id.].

An ALJ can properly find that the claimant lacked credibility when his alleged level of pain is not commensurate with the treatment he sought out or received. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility"); SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996) ("[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. The claimant's inability to afford medical treatment may constitute a sufficient reason for failing to

9

seek such treatment. Viverette v. Astrue, No. 5:07-CV-395-FL, 2008 WL 5087419, at *9 (E.D.N.C. Nov. 24, 2008).

In the present case, the ALJ applied an erroneous standard in requiring the Plaintiff to prove that she was turned away from an emergency room in order to demonstrate an inability to afford medical care. The Plaintiff's inability to afford treatment due to a lack of insurance is noted multiple times in the record. [T. 226, 258, 295]. In fact, in at least one instance, the Plaintiff was specifically denied further work-up to evaluate her back pain due to her lack of insurance. [T. 226]. It is reasonable and logical to infer that this work-up would have been necessary to determine whether further, more aggressive treatment was warranted. "A claimant may not be penalized for failing to seek treatment she cannot afford; it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)) (internal quotation marks omitted). The Court therefore concludes that the ALJ improperly relied on the Plaintiff's mostly conservative course of treatment in discounting her credibility.

While the Commissioner argues that each of these errors was harmless [Doc. 16-1 at 10, 13, 14], the cumulative effects of the errors in the record leads the Court to conclude that the ALJ's decision is not supported by substantial evidence. Accordingly, a remand is warranted.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 16] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 10] is **GRANTED** to the extent that the Plaintiff seeks reversal of the Commissioner's decision denying her disability benefits. To the extent that the Plaintiff seeks an immediate award of benefits, the Plaintiff's Motion [Doc. 10] is **DENIED**.

Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: February 28, 2013

Martin Reidinger
United States District Judge